

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-25-00316-CR

PAUL DARREN BRANTON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the Criminal District Court 4
Tarrant County, Texas[1]
Trial Court No. 1728706, Honorable Andy Porter, Presiding

July 27, 2026

MEMORANDUM OPINION

Before DOSS and YARBROUGH and PRATT, JJ.

Appellant, Paul Darren Branton, appeals from the judgment convicting him of murder, for which the trial court sentenced him to fifteen years of confinement.[2] By a single issue, Appellant contends that the trial court reversibly erred in excluding two

---

[1] This case was transferred from the Second Court of Appeals in Fort Worth pursuant to a docket equalization order from the Supreme Court of Texas. See TEX. GOV'T CODE § 73.001. We apply that court's precedent to the extent it conflicts with our own. TEX. R. APP. P. 41.3.

[2] See TEX. PENAL CODE § 19.02(b).

autopsy photographs of the decedent's right hand. Because Appellant has inadequately briefed his complaint and has in any event failed to show reversible error, we affirm.

## BACKGROUND

In the late evening hours of April 22, 2022, Appellant and his then-girlfriend left a Fort Worth bar after an argument. Instead of driving home, Appellant drove to the residence of James "Tony" Jones.[3] When Jones appeared on the porch, Appellant walked towards the porch and immediately began shooting.[4] Jones was struck multiple times and died from his injuries. Months earlier the two men had been involved in an altercation at the same bar.

Appellant later returned to the scene, voluntarily traveled to the police station, and gave a recorded interview that was admitted at trial. He admitted that he shot Jones and caused his death. Appellant's theory at trial was that he was acting in self-defense.

During cross-examination of the medical examiner, the defense offered autopsy photographs for admission into evidence. The State objected to Defense Exhibits 21 and 22 under Rules of Evidence 402, 403, 404, and 608(b). Both exhibits depicted the decedent's right hand, on which was tattooed what the trial court described as "a flaming Nazi cross with the words White Pride written on the cross." Defense counsel argued the

---

[3] Appellant's then-girlfriend testified that Appellant approached Jones's home "like he's going to square up on some brawl . . . . [A]t first I thought maybe he was going to go over there, fistfight him. Didn't think he was going to pull up and start shooting."

[4] Per the girlfriend, "As soon as [Jones is] out on the porch and says, What's up, Paul, [Appellant] immediately started shooting twice while – and then kind of chased after him running down shooting at him." (alteration added). She later testified that Jones was "running away" towards the street while Appellant pursued him. She added that Appellant "shot at [Jones] the whole time even when he was down on the ground."

2

photographs showed an exit wound and that a metal ring on the hand could be construed as a weapon, and added that in a self-defense case every wound bearing on cause of death is relevant. The trial court sustained the objection, stating: "Let's be honest, . . . with respect to Defendant's Exhibit 21, you're just trying to back door the hand tattoo. I mean, let's call a spade a spade."

The exclusion was narrow. Through a police sergeant the defense elicited testimony that the decedent bore a chest tattoo reflecting Aryan prison-gang slang, twin lightning-bolt tattoos associated with Aryan-affiliated groups, and other markings which the sergeant testified could possibly reflect an anarchy symbol. The sergeant further testified that gang members he had encountered were, in his experience, more inclined to be violent. Evidence of a large metal skull ring recovered from the decedent's hand, as well as toxicology results showing alcohol, cocaine, and marijuana, was also before the jury.

## ANALYSIS

We review a trial court's ruling on the admissibility of evidence for abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). Because the trial court sits in the best position to decide questions of admissibility, we uphold a ruling that falls within the zone of reasonable disagreement. *Id.* We will not reverse merely because we might have decided the matter differently. *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006). And we will sustain a correct ruling on any theory of law applicable to the case. *See Romero v. State*, 800 S.W.2d 539, 543

3

(Tex. Crim. App. 1990). The trial court did not specify under which theory it found the exhibits inadmissible.

Moreover, erroneous exclusion of evidence is governed by Rule 44.2(b). TEX. R. APP. P. 44.2(b); *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). Such error must be disregarded unless it affected a substantial right, meaning it had a substantial and injurious effect or influence in determining the jury's verdict. *Id*.

Texas Rule of Appellate Procedure 38.1(i) requires a clear and concise argument with appropriate citations to authorities and the record. An appellate court has no obligation to construct arguments for an appellant. *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008). Appellant's brief identifies the exclusion of Exhibits 21 and 22 as error but nowhere makes an argument explaining why the exclusion constituted error. The brief is devoted almost entirely to whether the court's ruling caused harm.[5] The issue is therefore inadequately briefed and presents nothing for review. *See* TEX. R. APP. P. 38.1(i); *Busby*, 253 S.W.3d at 673.

Even if the issue were adequately briefed, Appellant has not shown reversible error. The probative value of the specific "White Pride" tattoo on the self-defense theory was minimal. The evidence showed that Jones met Appellant's arrival at his home by walking on the front porch and saying, "What's up, Paul?" Appellant testified that Jones came toward him, which Appellant perceived as a threat. Even accepting that account,

---

[5] In support of his argument, Appellant cites *Gonzalez*, 544 S.W.3d at 373; *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021); *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023); *Marshall v. State*, 210 S.W.3d 618, 631 (Tex. Crim. App. 2006); and *Gant v. State*, 153 S.W.3d 294, 300 (Tex. App.—Beaumont 2004, pet. ref'd). None of those authorities addresses admissibility.

nothing in the record suggests Appellant had ever seen the specific "White Pride" tattoo or that it factored into his apprehension of danger. Moreover, the trial court did not preclude the defense from developing its theory that Jones was a violent, Aryan-affiliated individual. On this record the trial court could reasonably conclude that the incremental value of the two excluded photographs was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403.

Further, we hold that any residual error was harmless. Appellant admitted his actions caused Tony's death. The eyewitness account, the number and location of the wounds (including shots to the back and while Tony was on the ground), the ballistics evidence, and Appellant's recorded statements overwhelm any conceivable influence the excluded photographs might have had. Appellant, in fact, expressly concedes that any error in excluding the evidence was harmless.[6] *See* TEX. R. APP. P. 44.2(b). We overrule Appellant's sole issue.

## CONCLUSION

We affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.

---

[6] Appellant's brief further elaborates by stating, "Finally, when the trial court's tattoo decision is applied to the controversy pertaining to said tattoos, it is clear that the harm—if any—is immaterial when fitted to the harm analysis. In other words, the state of the evidence as set forth herein reveals that said ruling by the trial court has or had no bearing on the case . . . ."